IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL COOPER,** | : | **Civil No. 21-CV-01440** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF YORK O/A YORK** | : | |
| **COUNTY PRISON,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is a motion for summary judgment by Defendant County of York o/a York County Prison ("York"). (Doc. 25.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.   BACKGROUND

Michael Cooper is a 58-year-old male who was employed by York as a correctional officer for over twenty-one years until his termination in March 2021. (Doc. 23 ¶¶ 12-13.) Cooper suffers from certain disabilities related to his knees and legs, which limit him from performing some daily life activities, such as walking, standing for long periods of time, bending, and squatting. (*Id.* ¶ 16.)

Around May 29, 2020, Cooper experienced flare-ups of his health conditions, which made it difficult for him to perform some of his job duties, including completing his fifteen-minute rounds. (*Id.* ¶ 18.) As a result, Cooper requested and was placed on light duty status, working primarily at a security point check post that

did not require inmate interaction, prolonged standing, or climbing stairs. (*Id.* ¶¶ 20-21; Doc. 26-1 p. 22.)

Cooper testified that throughout his time working at the security checkpoint, certain members of York management, including his supervisor, Deputy Warden Adam Ogle, made numerous age and disability-related remarks to him. (Doc. 26-1 pp. 43, 48; Doc. 23 ¶ 14; Doc. 26-14 p. 7.) According to Cooper, Ogle's comments included repeatedly asking about Cooper's light duty status, as frequently as several times per day, as well as asking Cooper questions such as, "how much longer do you have to work before retirement, you aren't getting any younger," and "when are you going to retire?" (Doc. 23 ¶¶ 21, 30; 26-1 pp. 38-39, 48.) Cooper also testified that throughout the same period, York's human resources representative, Emily Strickhouser, asked him on several occasions, "when are you going to retire?" (Doc. 23 ¶ 30; Doc. 26-1 p. 48.)

In June 2020, Cooper applied for and was granted intermittent leave under the Family and Medical Leave Act ("FMLA"), which he took at varying points throughout his remaining time with York. (Doc. 26-1 p. 23, 39.)

In early March 2021, Cooper participated in a pre-disciplinary conference ("PDC") with Ogle and Strickhauser, who asked Cooper when he could come off light-duty status. (Doc. 23 ¶ 22; Doc. 26-1 p. 56.) Cooper responded that only his doctor could answer that question, and that he had a follow-up appointment in a few

weeks. (Doc. 23 ¶ 22.) Cooper was also asked whether he could perform the essential functions of the corrections officer position, to which he responded that it depended on what the position was, but that he cannot work a post that requires him to walk stairs. (Doc. 26 ¶ 36; Doc. 26-1 p. 31; Doc. 26-25 p. 2.) On March 12, 2021, York terminated Cooper's employment. (Doc. 26-25 p. 2.)

In August 2021, Cooper initiated this action against York by filing a complaint, which he subsequently amended in September 2022. (Doc. 1; Doc. 23.) Count I asserts claims for disability discrimination, retaliation, hostile work environment, and failure to accommodate in violation of the Americans with Disabilities Act, as Amended ("ADA"). Count II asserts a claim of retaliation under the Family and Medical Leave Act ("FMLA"). Count III asserts a claim for age discrimination and hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"). Count IV asserts disability discrimination under the Pennsylvania Human Relations Act ("PHRA"). Count V asserts claims for age discrimination and hostile work environment under the PHRA.

York has filed a motion requesting summary judgment on all counts. (Doc. 25.) The motion has been fully briefed and is ripe for review.


## II.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in their favor. *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there

is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

## III.   **DISCUSSION**

### A. Disability Discrimination

York's motion requests summary judgment on Cooper's disability discrimination claims. The ADA and PHRA prohibit employment discrimination based on disability. 42 U.S.C. § 12112; 43 Pa. Cons. Stat. § 955. To establish a prima facie case of disability discrimination, the plaintiff must demonstrate that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F. 3d 604, 611 (3d Cir. 2006) (internal quotations and citation omitted); *see Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something

specifically different in its language requiring that it be treated differently."). If the plaintiff establishes a prima facie claim, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the adverse employment action. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer satisfies its burden, the burden then shifts back to the plaintiff to show that the defendant's explanation is a pretext for discrimination. *Anderson v. Wachovia Morg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010).

Here, York's motion correctly argues it is entitled to summary judgment on Cooper's disability discrimination claim at the first step of the *McDonnell Douglas* analysis because Cooper cannot show he was a "qualified individual" at the time of his termination. There is no factual dispute that York corrections officers are responsible for the care, custody, and control of inmates (Doc. 26 p. 4), and the job description for the position makes clear that officers "must be physically able" to (1) "stand for periods of two hours or longer," (2) "climb stairs to conduct required security rounds," (3) "respond to emergencies by walking quickly," and (4) "be involved in physical altercations and apply appropriate restraints." (Doc. 26-3 p. 2.) Notwithstanding these requirements, shortly before his termination, Cooper acknowledged to Ogle and Strickhauser that he was unable or unwilling to navigate stairs or respond to certain emergencies, explaining to them that if "somebody is

counting on me to get to them quickly in an emergent situation, and my physical limitation prevented that, I would be reluctant to take the responsibility for being placed in that situation." (Doc. 26 ¶ 37.) There is no suggestion in the record that Cooper could climb stairs or quickly walk during emergencies with the assistance of a reasonable accommodation. And as numerous federal courts analyzing similar factual scenarios have persuasively held, given the sensitive nature and challenges of working in a prison environment, a corrections officer unable to perform the essential custody and control functions of the position is not a "qualified individual" for purposes of the ADA. *See e.g.*, *Gera v. Cnty. of Schuylkill*, 617 F. App'x 144, 146 (3d Cir. 2015) (upholding a district court's findings that a corrections officer was not properly classified as a qualified individual where the officer "conceded that he could not engage in the custody or control of inmates due to his physical disabilities" and "[n]o reasonable accommodation existed that would have enabled [the officer] to perform this function."); *see also Mannan v. Colorado*, 841 F. App'x 61, 68 (10th Cir. 2020) (holding that correction officer operating in prison control room was not a qualified individual because they would be unable to execute the "essential functions" of a corrections officer position including swiftly responding to an emergency and applying physical restraint); *Dargis v. Sheahan*, 526 F.3d 981, 988 (7th Cir. 2008) (finding county correctional officer who previously suffered a stroke was not a qualified individual for ADA purposes because he could not

demonstrate that he could perform the essential functions of the position requiring inmate contact); *Cole v. Taber*, 587 F. Supp. 2d 856, 865 (W.D. Tenn. 2008) (granting summary judgment and finding that the plaintiff, a county corrections officer, was not a qualified individual under the ADA given his inability to conduct security checks, escort inmates, or respond to emergency situations). York is therefore entitled to summary judgment on Cooper's ADA and PHRA disability discrimination claims.

## B. Age Discrimination

For substantially the same reasons, York is entitled to summary judgment on Cooper's age discrimination claims. The ADEA and PHRA prohibit employers from discriminating against an employee because of age. *See* 29 U.S.C. § 623(a)(1); 43 P.S. § 955(a). To prevail on a claim for age discrimination, the plaintiff must show that his age "actually motivated" or "had a determinative influence on" the employer's adverse employment action. *Fasold v. Just.*, 409 F.3d 178, 183–84 (3d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)); *see Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n. 1 (3d Cir. 2005) ("The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively."). Where, as here, the plaintiff relies upon indirect evidence of discrimination, age discrimination claims are analyzed pursuant to the *McDonnell Douglas* framework. *Fasold*, 409 F.3d at 184; *see also Evanoski*

*v. United Parcel Serv., Inc.*, 571 F. App'x 92, 95 (3d Cir. 2014). To state a prima

facie case of age discrimination, a plaintiff must demonstrate the following:

> [F]irst, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.

*Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

Here, Cooper cannot establish a prima facie case of age discrimination,

because, as discussed above, he was not qualified for the position of a corrections

officer. The record is clear that Cooper was unwilling or unable to carry out the

essential functions of the position, and Cooper's arguments that York could have

transformed his temporary light duty assignment into a full-time position are

unpersuasive. Moreover, even if he could show he was qualified for the position,

Cooper still fails to satisfy his burden because there is no evidence in the record that

he was ultimately replaced by a sufficiently younger employee. While Cooper

attempts to rely on a list of newly-hired individuals to satisfy this aspect of a prima

facie case (*see* Doc. 30 ¶ 120), the list merely sets forth the names and hiring dates

of individuals—not their birthdates. (*See* Doc. 28-20.) The deposition testimony on

which Cooper relies, including testimony by Ogle, likewise sheds no light on the age

of individuals who replaced Cooper at his light duty post. (*See* Doc. 26-14 p. 31.)

Because Cooper does not point to specific evidence in the record to support that he

was qualified for the position or that he was replaced by a sufficiently younger individual, he fails to satisfy his prima facie burden, and York is entitled to summary judgment on Cooper's age discrimination claims.

### C. ADA and PHRA Retaliation

York also moves for summary judgment on Cooper's claims for retaliation under the ADA and PHRA. (Doc. 23 pp. 9-10.) "To establish a prima facie retaliation claim under the ADA, an employee must show '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Soutner v. Penn State Health*, 841 F. App'x 409, 415 (3d Cir. 2021) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its decision. *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer satisfies its burden, the burden shifts back to the plaintiff to show pretext "by identifying evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Duran v. Cnty. of*

*Clinton*, 380 F. Supp. 3d 440, 454 (M.D. Pa. 2019) (quoting *Shaner v. Synthes*, 204 F.3d 494, 501 (3d Cir. 2000)).

Here, York does not dispute that Cooper presents a prima facie case of ADA retaliation. The record supports that Cooper engaged in a protected activity and asserted his rights under the ADA by seeking accommodations for his knee and leg problems, and that Cooper ultimately experienced an adverse action in the form of his termination. Moreover, the record contains some evidence of a causal connection between Cooper's request for accommodations and termination. Cooper testified that immediately following his request for accommodation and continuing through until his termination, he was consistently subjected to comments and unnecessary inquiries related to his light-duty status and plans for retirement. (*See* Doc. 28 pp. 22-23; Doc. 26-1 pp. 39, 56.) Cooper testified he was inundated with light-duty remarks and inquiries as much as several times per day, sometimes within in an hour of one another. (*See* Doc. 26-1 pp. 39, 42, 107.) While many of the comments may not have been inherently discriminatory, they were made by individuals with supervisory authority, including one supervisor who ordered Cooper to come off light duty, and they unambiguously invoked Cooper's disability, advanced age, and separation from the County. Considering this evidence, Cooper is able to satisfy his prima facie burden.

Just as Cooper is able to satisfy his initial burden, York satisfies its burden of articulating a legitimate and non-discriminatory reason for its decision to terminate Cooper. York contends that Cooper was terminated due to his inability to execute the essential functions of a correctional officer position and come off light-duty, and for substantially the same reasons outlined above, the record supports Cooper was unable or unwilling to do so. (*See* Doc. 26-25 p. 2.)

So too does Cooper satisfy his burden of presenting sufficient evidence from which a factfinder could disbelieve York's proffered reason or believe that retaliation was more likely than not a motivating cause of York's termination decision. Cooper's testimony that immediately upon requesting an accommodation, he was repeatedly questioned about his light-duty status and plans for retirement, would allow a reasonable jury to infer that York was displeased with the underlying request itself. The timing of the purported questions and comments, viewed in a light most favorable to Cooper, arguably undermines York's explanation that Cooper's termination was spurred by his long-term inability to complete the essential duties of his position. The remarks were made by ostensible decisionmakers—human resources personnel and Cooper's supervisor, the Deputy Warden—and occurred with such purported frequency that they could reasonably be viewed as an attempt by York to drive Cooper from his position. To be sure, there is ample evidence in the record to support York's version of the events that Cooper was terminated

because he overstayed the County's regular period for light-duty and was unable or unwilling to execute the essential functions of the position. But that evidence must be weighed against the apparent scrutiny and pushback Cooper experienced from the time he requested light duty until his termination. And considering the timing and frequency of the Cooper's treatment, as well as the subjects and speakers of the comments made to him, a reasonable jury could find that retaliation played a role in Cooper's termination. Summary judgment is therefore not appropriate on Cooper's ADA and PHRA retaliation claims.

### D. FMLA Retaliation

York also moves for summary judgment on Cooper's FMLA retaliation claim. Under the FMLA, an employer may not "'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful.'" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (quoting 29 U.S.C. § 2615(a)(2)). "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 301-02. Where, as here, the plaintiff's claim is not predicated on direct evidence of retaliation, the claim is analyzed using the *McDonnell Douglas* burden shifting framework. *Id.* at 302.

Here, York's motion correctly argues that Cooper cannot establish prima facie claim because there is no evidence in the record of a causal connection between Cooper's invocation of FMLA rights and his eventual termination. No temporal connection exists between the events because Cooper requested and was continually approved for intermittent FMLA leave beginning at least nine months prior to his termination. (*See* Doc. 26-1 p. 41.) Cooper does not point to any evidence suggesting that York disapproved of him taking FMLA leave, and in stark contrast to the treatment Cooper received regarding his light duty status, there is no indication that Cooper was incessantly questioned or otherwise subjected to repeated comments regarding his leave under the statute. Cooper's testimony to the contrary relies on subjective feelings and beliefs which are insufficient to establish causation. *Cf. Dinnerstein v. Burlington Cnty. Coll.*, 764 F. App'x 214, 217 (3d Cir. 2019). (*See* Doc. 26-1 p. 41) ("I think management was of the opinion that, you know, that I had had FMLA, maybe they felt I had it long enough. I don't remember that being clearly said at any point. And, again, it was mostly attitudinal rather than overt action being taken on anyone's part.") Moreover, while Cooper points to a suspension he received in connection with FMLA leave, the relevant suspension notice indicates it was issued because Cooper tried calling off work after having already used his approved leave under the statute. (*See* Doc. 28-12 p. 2.) There is no reason to credit Cooper's conclusory claim that the suspension was issued in retaliation for his taking leave in

the first place. And in the absence of any perceptible link between Cooper's exercise of FMLA rights and his termination by York, Cooper is unable to satisfy a prima facie claim. York is accordingly entitled to summary judgment on Cooper's FMLA retaliation claim.

### E. Hostile Work Environment

Finally, York's motion requests summary judgment on Cooper's claims for hostile work environment under the ADEA and PHRA. "To prevail on a hostile work environment claim, a plaintiff must show that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Culler v. Sec'y of U.S. Veterans Affairs,* 507 Fed.Appx. 246, 249–50 (3d Cir.2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, (2002)) (alteration omitted); *see Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim."); *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (treating PHRA claim the same as plaintiff's ADEA and Title VII claims).

York is entitled to summary judgment on Cooper's hostile work environment claims because the treatment he claims to have been subjected to was not sufficiently

severe or pervasive. While Cooper testified that he was the target of roughly sixty age-related comments between October 2020 and March 2021, many of the remarks appear to have been routine requests for information about Cooper's disability status, and the comments went no further than asking about retirement, repeatedly noting Cooper's light duty status, and telling Cooper that he was not "get[ting] any younger." (*See* Doc. 26-1 pp. 43-44, 47-48.) The remarks were, by and large, not inherently discriminatory, and there is no evidence that Cooper was physically threatened, publicly humiliated, screamed at, or targeted with any epithets. Even viewing the record in a light most favorable to Cooper, no reasonable jury could find that the comments to which he testified altered the conditions of his employment or created an abusive work environment. *See Whitesell v. Dobson Comm'n,* 353 F. App'x 715, 717 (3d Cir.2009) (dismissing hostile work environment claims where plaintiff's supervisor's age-related remarks were neither physical threatening nor humiliating nor interfered with plaintiff's work performance). York is therefore entitled to summary judgment on Cooper's hostile work environment claims.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, York's motion for summary judgment will be granted in part and denied in part. An appropriate order shall follow.

Dated: January 17, 2024

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge
